FILED

2015 Oct-19  PM 12:31
U.S. DISTRICT COURT
N.D. OF ALABAMA



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| Jerry L. Conway, D.C., et al., | ) |
| | ) |
|      Plaintiffs, | ) |
| | ) |
| v. | )   Case No.: 2:15-cv-01345-RDP |
| | ) |
| Blue Cross and Blue Shield of Alabama, et al., | ) |
| | ) |
|      Defendants. | ) |
| | ) |

**<u>DEFENDANT CAPITAL BLUECROSS'S MOTION TO DISMISS FOR</u>**
**<u>LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

PROCEDURAL BACKGROUND ..................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 3

LEGAL STANDARDS ..................................................................................................... 5

I.      PERSONAL JURISDICTION ............................................................................... 5

II.     VENUE ................................................................................................................ 6

ARGUMENT ................................................................................................................... 7

I.      THERE IS NO PERSONAL JURISDICTION OVER CAPITAL UNDER
        SECTION 12 OF THE CLAYTON ACT .............................................................. 7

        A.      Plaintiffs Must Meet The Venue Requirement Under Section 12 To Use
                Its Nationwide Service Clause. .............................................................. 7

        B.      To Establish Section 12 Venue, Plaintiffs Must Allege Sufficient Facts
                Showing Transaction Of Substantial Business In The Jurisdictions. .......... 7

        C.      Plaintiffs Do Not Allege Sufficient Facts Showing That Capital Transacts
                Substantial Business In The Jurisdictions. ................................................ 9

        D.      Jurisdiction Over Capital Pursuant To Section 12 Does Not Comport With
                Due Process. ........................................................................................... 9

                1.      Litigating In The Jurisdictions Would Impose An Unreasonable
                        Burden On Capital. ..................................................................... 10

                2.      Federal Interests Do Not Outweigh This Burden. ......................... 11

II.     PLAINTIFFS CANNOT ESTABLISH PERSONAL JURISDICTION
        UNDER STATE LONG-ARM STATUTES. ....................................................... 13

        A.      Legal Standard ...................................................................................... 13

        B.      Plaintiffs Do Not Establish Minimum Contacts Because They Have Not
                Demonstrated Purposeful Availment By Capital. ..................................... 16

        C.      Plaintiffs' Antitrust Causes Of Action Do Not Arise Out Of Or Relate To
                Capital's Contacts With The Jurisdictions. .............................................. 19

D.    Based On Its Limited Contacts With The Jurisdictions, Capital Would Not Reasonably Anticipate Being Haled Into Court There. ........................................ 20

E.    Plaintiffs' Vague Conspiracy Allegations Do Not Establish Personal Jurisdiction In The Jurisdictions. ................................................................ 20

F.    Exercising Personal Jurisdiction Over Capital Would Not Comport With "Fair Play And Substantial Justice." .................................................. 22

III.  VENUE IS IMPROPER UNDER SECTIONS 4 AND 16 AND 28 U.S.C. § 1391 ...................................................................................................... 23

A.    There Is No Venue Under Sections 4 And 16 Of The Clayton Act. ..................... 23

B.    There Is No Venue Under 28 U.S.C. § 1391. ...................................... 23

CONCLUSION .................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**            **Page(s)**

*Albert Levine Assocs. v. Bertoni & Cotti*,
    309 F. Supp. 456 (S.D.N.Y. 1970)............................................................................. 8

*Anrig v. Ringsby United*,
    603 F.2d 1319 (9th Cir. 1979) ............................................................................... 12

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.*,
    480 U.S. 102 (1987)............................................................................................... 11

*Atkins v. Calypso Sys. Inc.*,
    2015 WL 1508415 (D. Ariz. Apr. 1, 2015) ........................................................... 13

*Austad v. U.S. Steel Corp.*,
    141 F. Supp. 437 (N.D. Cal. 1956) ........................................................................ 9

*Banana Distribs., Inc. v. United Fruit Co.*,
    269 F.2d 790 (2d Cir. 1959)................................................................................... 8

*Bayada Nurses, Inc. v. Blue Cross Blue Shield of Mich.*,
    2008 WL 2945388 (E.D. Pa. July 30, 2008)................................................... 17, 18

*Beacon Enters., Inc. v. Menzies.*,
    715 F.2d 757 (2d Cir. 1983)................................................................................ 14, 15

*Berg v. Blue Cross & Blue Shield of Utica-Watertown, Inc.*,
    1993 WL 467859 (N.D. Cal. Nov. 2, 1993) ......................................................... 18

*Black v. JP Morgan Chase & Co.*,
    2011 WL 4102802 (W.D. Pa. Aug. 10, 2011) ...................................................... 23

*Browning Enter., Inc. v. Rex Iron Mach. Prods. Co.*,
    504 F. Supp. 2d 1217 (N.D. Ala. 2007)........................................................... 16, 23

*Buckley v. Robertson*,
    1997 WL 33642373 (S.D. Ala. Apr. 18, 1997)...................................................... 7

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)............................................................................................... 16

*Butler v. Beer Across Am.*,
    83 F. Supp. 2d 1261 (N.D. Ala. 2000)................................................................... 11

*Choice Healthcare v. Kaiser Found. Health Plan of Colo.*,
    615 F.3d 364 (5th Cir. 2010) ...................................................................... 13, 17, 18, 20

*Daniel v. Am. Bd. of Emergency Med.*,
    428 F.3d 408 (2d Cir. 2005).............................................................................. 8, 9, 12

*Delgado v. Reef Resort Ltd.*,
    364 F.3d 642 (5th Cir. 2004) ...................................................................................... 14

*Delong Equip. Co. v. Washington Mills Abrasive Co.*,
    840 F.2d 843 (11th Cir. 1988) ............................................................................... 6, 13

*E.E.O.C. v. Vicksburg Healthcare, LLC*,
    2014 WL 4715463 (S.D. Miss. Sept. 22, 2014).......................................................... 13

*Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.*,
    273 U.S. 359 (1927)...................................................................................................... 8

*Estate of Myhra v. Royal Caribbean Cruises, Ltd.*,
    695 F.3d 1233 (11th Cir. 2012) .................................................................................... 7

*Fraser v. Smith*,
    594 F.3d 842 (11th Cir. 2010) ............................................................................. 10, 19

*Gates v. Wilkinson*,
    2003 WL 21297296 (S.D.N.Y. June 4, 2003) ............................................................. 8

*Gen. Elec. Co. v. Bucyrus-Erie Co.*,
    550 F. Supp. 1037 (S.D.N.Y. 1982)............................................................................. 8

*Giraldo v. Drummond Co.*,
    2012 WL 2358306 (N.D. Ala. June 20, 2012).......................................................... 22

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
    131 S. Ct. 2846 (2011)................................................................................................ 15

*Goya Foods Inc. v. Oy*,
    959 F. Supp. 2d 206 (D.P.R. 2013)............................................................................ 21

*Hart v. Salois*,
    605 F. App'x 694 (10th Cir. 2015) ............................................................................ 21

*Hi-Tex, Inc. v. TSG, Inc.*,
    87 F. Supp. 2d 738 (E.D. Mich. 2000)...................................................................... 18

*In re Aluminum Warehousing Antitrust Litig.*,
   90 F. Supp. 3d 219 (S.D.N.Y. 2015).................................................................... 22

*In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*,
   923 F. Supp. 1524 (S.D. Ala. 1996)...................................................................... 5

*In re Korean Air Lines Disaster of September 1, 1983*,
   829 F.2d 1171 (D.C. Cir. 1987) ............................................................................ 5

*In re U.S. Office Prods. Co. Sec. Litig.*,
   251 F. Supp. 2d 58 (D.D.C. 2003) ........................................................................ 6

*Indus. Models, Inc. v. SNF, Inc.*,
   2015 WL 2399089 (N.D. Ill. May 18, 2015) ........................................................ 9

*Indus. Siderurgica, Inc. v. Thyssen Steel Caribbean, Inc.*,
   14 P.R. Offic. Trans. 708 (P.R. 1983).................................................................. 21

*Int'l Air Med. Servs. Inc. v. Triple-S Salud Inc.*,
   2015 WL 5158832 (D. Ariz. Sept. 3, 2015)................................................... 17, 18

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)............................................................................................ 15

*Intrust Fin. Corp. v. Entrust Fin. Credit Union*,
   2012 WL 2993893 (D. Kan. July 20, 2012) ....................................................... 18

*Jenkins Brick Co. v. Bremer*,
   321 F.3d 1366 (11th Cir. 2003) ......................................................................... 24

*KM Enters., Inc. v. Global Traffic Techs., Inc.*,
   725 F.3d 718 (7th Cir. 2013) ...................................................................... passim

*Kuenzle v. HTM Sport-Und Freizeitgerate AG*,
   102 F.3d 453 (10th Cir. 1996) ..................................................................... 13, 19

*Lawati v. Montague Morgan Slade Ltd.*,
   102 A.D.3d 427 (N.Y. App. Div. 2013) .............................................................. 21

*McFadin v. Gerber*,
   587 F.3d 753 (5th Cir. 2009) ...................................................................... 18, 19

*Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*,
   288 F.3d 1264 (11th Cir. 2002) ........................................................................... 6

*Mercantile Capital, LP v. Fed. Transtel, Inc.*,
    193 F. Supp. 2d 1243 (N.D. Ala. 2002) .................................................................. 6

*Merriman v. Crompton Corp.*,
    146 P.3d 162 (Kan. 2006) ................................................................................ 21, 22

*Mewbourne v. Cheytac, USA, LLC*,
    2013 WL 1346569 (N.D. Ala. Mar. 29, 2013) ......................................................... 6

*Murdoch v. Rosenberg & Assocs., LLC*,
    875 F. Supp. 2d 6 (D.D.C. 2012) .......................................................................... 24

*Murphy v. F.D.I.C.*,
    208 F.3d 959 (11th Cir. 2000) ................................................................................ 5

*Negron-Torres v. Verizon Commc'ns, Inc.*,
    478 F.3d 19 (1st Cir. 2007) .................................................................................. 13

*Perez v. Pan Am. Life Ins. Co.*,
    1996 WL 511748 (5th Cir. 1996) .......................................................................... 20

*Pocahontas Supreme Coal Co., Inc. v. Nat'l Mines Corp.*,
    90 F.R.D. 67 (S.D.N.Y. 1981) .............................................................................. 23

*Pritchett v. Paschall Truck Lines, Inc.*,
    714 F. Supp. 2d 1171 (M.D. Ala. 2010) ................................................................. 6

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*,
    119 F.3d 935 (11th Cir. 1997) .................................................................. 10, 11, 22

*Resolution Trust Corp. v. First Am. Bank*,
    796 F. Supp. 1333 (C.D. Cal. 1992) ..................................................................... 17

*Sanderson v. Spectrum Labs, Inc.*,
    227 F. Supp. 2d 1001 (N.D. Ind. 2000) .................................................................. 9

*Small v. Lorillard Tobacco Co.*,
    672 N.Y.S.2d 601 (Sup. Ct. N.Y. Cnty. 1997) ...................................................... 21

*Smith Stag, L.L.C. v. Wilson & Meyer Custom Theater Interiors, L.L.C.*,
    6 So. 3d 921 (La. Ct. App. 2009) .......................................................................... 21

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
    450 F.3d 100 (2d Cir. 2006) .................................................................................. 15

*St. Luke's Episcopal Hosp. v. La. Health Serv. & Indem. Co.*,
    2009 WL 47125 (S.D. Tex. Jan. 6, 2009) ...................................................... 17

*Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*,
    249 F.3d 413 (5th Cir. 2001) ............................................................................ 14

*Tymoshenko v. Firtash*,
    2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013) .................................................. 22

*United States v. Nat'l City Lines*,
    334 U.S. 573 (1948) .......................................................................................... 12

*United States v. Scophony Corp. of Am.*,
    333 U.S. 795 (1948) ............................................................................................ 8

*United Techs. Corp. v. Mazer*,
    556 F.3d 1260 (11th Cir. 2009) ......................................................................... 6

*Unlimited Care, Inc. v. Visiting Nurse Ass'n of E. Mass., Inc.*,
    42 F. Supp. 2d 327 (S.D.N.Y. 1999) ............................................................... 15

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) .......................................................................... 16, 17, 22

*Walker v. Madorsky*,
    2013 WL 950622 (Ariz. Ct. App. Mar. 12, 2013) ........................................... 21

*West Virginia v. Morton Int'l, Inc.*,
    264 F. Supp. 689 (D. Minn. 1967) ................................................................... 12

*Westor Theatres v. Warner Bros. Pictures*,
    41 F. Supp. 757 (D.N.J. 1941) ......................................................................... 12

*Whittaker v. Med. Mut. of Ohio*,
    96 F. Supp. 2d 1197 (D. Kan. 2000) .......................................................... 13, 17

*Willingway Hosp., Inc. v. Blue Cross & Blue Shield of Ohio*,
    870 F. Supp. 1102 (S.D. Ga. 1994) ............................................................... 7, 13

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ...................................................................................... 20, 22

**Statutes**

15 U.S.C. § 15(a) ............................................................................................. 23

15 U.S.C. § 22 ................................................................................................... 7

15 U.S.C. § 26 ................................................................................................. 23

28 U.S.C. § 1391 ............................................................................................... 3

28 U.S.C. § 1391(b) .................................................................................... 23, 24

28 U.S.C. § 1391(c) ......................................................................................... 24

Ariz. R. Civ. P. 4.2(a) ..................................................................................... 13

Kan. Stat. Ann. § 60-308(b)(1)(A), (1)(D) ...................................................... 13

La. Rev. Stat. Ann. 13:3201(A)(1) .................................................................. 13

Miss. Code. Ann. § 13-3-57 ............................................................................ 13

N.Y. C.P.L.R. § 302(a)(1) ............................................................................... 14

P.R. Laws Ann. T. 32 Ap. III, Rule 4.7 .......................................................... 13

Wyo. Stat. Ann. § 5-1-107 .............................................................................. 13

**Rules**

Fed. R. Civ. P. 12(b)(2) ................................................................................ 1, 24

Fed. R. Civ. P. 12(b)(3) ................................................................................ 1, 24

Fed. R. Civ. P. 4(k)(1)(A) ............................................................................ 6, 13

Fed. R. Civ. P. 4(k)(1)(C) ............................................................................... 6

## DEFENDANT CAPITAL BLUECROSS'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

Defendant Capital BlueCross ("Capital") moves to dismiss the complaint for lack of personal jurisdiction and, alternatively, improper venue.  *See* Fed. R. Civ. P. 12(b)(2) & (3).

## PRELIMINARY STATEMENT

Provider plaintiffs have overreached in suing all Blue Plans in new complaints in the District of Arizona, the District of Kansas, the Middle District of Louisiana, the Southern District of Mississippi, the Southern District of New York, the District of Puerto Rico, and the District of Wyoming (hereinafter, the "Jurisdictions"), regardless of whether they transact business there or not.  Providers have not, and cannot, allege sufficient facts or viable legal theories to secure personal jurisdiction over Capital in the Jurisdictions.  Capital therefore moves to dismiss providers' complaints filed originally in the Jurisdictions, and transferred to this Court to be part of the multidistrict litigation styled *In re Blue Cross Blue Shield Antitrust Litigation*, MDL No. 2406, for lack of personal jurisdiction and, alternatively, improper venue.  As its supporting declaration confirms, Capital does not do business in or otherwise have meaningful contacts with the Jurisdictions sufficient to confer personal jurisdiction or to make venue proper there.

## PROCEDURAL BACKGROUND

This multidistrict litigation includes putative class actions brought by providers and subscribers in various jurisdictions throughout the country asserting antitrust claims against Blue Plans and the Blue Cross and Blue Shield Association.  On September 30 and November 1, 2013, Capital filed motions to dismiss underlying provider and subscriber actions in Alabama and North Carolina[1] for lack of personal jurisdiction and improper venue.[2]  Other Blue Plans

---

[1] Providers sued all defendants in the Northern District of Alabama in *Conway, et al. v. Blue Cross and Blue Shield of Alabama, et al.*, 2:12-cv-02532.  Subscribers sued all defendants in the Northern District of (Continued...)

filed similar motions.  On April 9, 2014, the Court heard argument only on the question of "what rule of law should be applied to determine personal jurisdiction and venue in the antitrust context."  Mem. Op. at 24, June 18, 2014, ECF No. 204.

On June 18, 2014, the Court ruled in favor of the moving defendants, holding that plaintiffs must satisfy the venue requirements of Section 12 of the Clayton Act if they intend to rely on its nationwide service of process provision to establish personal jurisdiction.  *Id.* at 28-29 (this approach, outlined by the Seventh Circuit, "is the correct rule of law").  The Court did not rule on any other aspect of the motions.

On December 22, 2014, Capital (along with a number of other Blue Plans) renewed its motion to dismiss the underlying provider and subscriber actions in Alabama and North Carolina for lack of personal jurisdiction and improper venue.[3]  After considering the renewed motions to dismiss, the Court allowed the plaintiffs to engage in jurisdictional discovery regarding the extent to which, if any, the moving defendants transacted business in the relevant districts.  Order at 2-3, May 27, 2015, ECF No. 369.  Providers and subscribers are currently conducting discovery of those defendants who filed motions to dismiss underlying actions in Alabama and North Carolina for lack of personal jurisdiction and venue.

In an attempt to secure personal jurisdiction over defendants who moved to dismiss providers' Alabama action, providers filed seven new underlying cases in states where those defendants have their principal place of business.  But instead of simply suing those defendants,

---

Alabama in *American Electric Motor Services, Inc. v. Blue Cross and Blue Shield of Alabama*, 2:12-cv-02169, and in the Western District of North Carolina in *Cerven v. Blue Cross and Blue Shield of North Carolina*, 2:12-cv-04169.

[2] *See* ECF Nos. 119 & 136 (unredacted versions of Capital's motions, filed under seal).

[3] *See* ECF No. 314 (unredacted version of Capital's motion, filed under seal).

providers sued all Blue Plans as named defendants in each of those actions.  A new provider plaintiff also filed a new action in Louisiana against all Blue Plans except one.[4]

In these cases, providers make the following allegations regarding this Court's personal jurisdiction over defendants in the Jurisdictions: (1) defendants do significant business in and have significant contacts with the Jurisdictions through national programs, *e.g.*, the BlueCard program, either because their subscribers receive treatment in the Jurisdictions or because residents of the Jurisdictions receive treatment in the defendants' respective service areas; (2) to the extent any of the defendants' members live in the Jurisdictions, the defendants intended to pay claims on behalf of those members when the defendants agreed to offer insurance or administrative services to employers with employees who reside there; and (3) defendants have conspired with the Blue Plans based in the Jurisdictions.  *See, e.g.,* Compl., Case No.: 2:15-cv-01345-RDP, ¶ 12, ECF No. 1.  Providers allege that personal jurisdiction is proper in the Jurisdictions under Section 12 of the Clayton Act and under state long-arm statutes.  *Id.* ¶ 13.

Providers allege venue is proper in the Jurisdictions under Section 12 of the Clayton Act and 28 U.S.C. § 1391.  *Id.* ¶ 14.

## FACTUAL BACKGROUND

Capital is a Pennsylvania hospital plan corporation that does business in a 21-county service area in central Pennsylvania and the Lehigh Valley.  *See* Declaration of Kimberly Meals ¶¶ 3-4, attached hereto as Exhibit 1.  Capital is neither incorporated in nor has its principal place of business in the Jurisdictions.  *Id.*  Capital is not licensed to do business in the Jurisdictions,

---

[4] Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana has not filed a motion to dismiss for lack of personal jurisdiction and improper venue and is not named as a defendant in the Louisiana action.  *See Hosp. Serv. Dist. 1 of the Parish of E. Baton Rouge, La. d/b/a Lane Reg'l Med. Ctr. v. Blue Cross and Blue Shield of Alabama, et al.*, 2:15-cv-1476.

and does not conduct business there.  *Id.* ¶ 14.  Capital does not advertise or engage in any public

relations activities in the Jurisdictions.  *Id.* ¶ 15.  Capital does not maintain an office or corporate

records in the Jurisdictions.  *Id.* ¶¶ 8-9.  Capital does not employ any persons in the Jurisdictions,

and has no registered agent there.  *Id.* ¶¶ 10-11.  Capital does not own property in the

Jurisdictions, does not maintain any bank accounts there, and does not pay taxes there.  *Id.* ¶¶ 7

& 13.

Capital neither issues insurance contracts or policies, nor solicits business of any kind, in

the Jurisdictions.  *Id.* ¶¶ 5 & 14.  Capital does not contract with hospitals or other medical

facilities or health care providers in the Jurisdictions.  *Id.* ¶ 6.

Capital has an insignificant number of members in the Jurisdictions.[5]  A miniscule

percentage of Capital's members' claims in 2014 were made for services from health care

providers in the Jurisdictions.[6]

---

[5] Out of Capital's approximately ▅▅▅ members, ▅▅▅ of them have an Arizona address on file with Capital, representing 0.153% of its members, ▅▅▅ of them have a Kansas address on file with Capital, representing 0.135% of its members, ▅▅▅ of them have a Louisiana address on file with Capital, representing 0.228% of its members, ▅▅▅ of them have a Mississippi address on file with Capital, representing 0.058% of its members, ▅▅▅ of them have a New York address on file with Capital, representing 0.532% of its members, ▅▅▅ of them have a Puerto Rico address on file with Capital, representing 0.005% of its members, and ▅▅▅ of them have a Wyoming address on file with Capital, representing 0.133% of its members.  *See* Declaration of Kimberly Meals ¶¶ 17, 20, 23, 26, 29, 32, and 35.

[6] Of Capital's 2014 payments for health care services, approximately 0.060% were for services rendered in Arizona to members residing in Arizona, 0.028% were for services rendered in Arizona to its other members, 0.051% were for services rendered in Kansas to members residing in Kansas, 0.138% were for services rendered in Kansas to its other members, 0.127% were for services rendered in Louisiana to members residing in Louisiana, 0.017% were for services rendered in Louisiana to its other members, 0.010% were for services rendered in Mississippi to members residing in Mississippi, 0.009% were for services rendered in Mississippi to its other members, 0.324% were for services rendered in New York to members residing in New York, 0.408% were for services rendered in New York to its other members, 0.0003% were for services rendered in Puerto Rico to members residing in Puerto Rico, 0.0002% were for services rendered in Puerto Rico to its other members, 0.0065% were for services rendered in Wyoming to members residing in Wyoming, and 0.0049% were for services rendered in Wyoming to its other members.  *Id.* ¶¶ 18-19, 21-22, 24-25, 27-28, 30-31, 33-34, and 36-37.

Providers do not allege any act or event involving Capital in the Jurisdictions. For example, in asserting their antitrust claims, providers do not plead any *facts* demonstrating that Capital entered into any agreements or otherwise engaged in any allegedly anticompetitive conduct in the Jurisdictions. *See, e.g.,* Compl., Case No.: 2:15-cv-01345-RDP, ¶ 12. And while providers allege that all defendants participate in the BlueCard program and other national programs, *see id.*, they do not allege any facts showing specific actions taken by Capital through these programs in the Jurisdictions.

## LEGAL STANDARDS

### I.   PERSONAL JURISDICTION

This Court, as an MDL court, may exercise jurisdiction over Capital only to the same extent as the transferor courts, and venue is proper in this Court only if it is proper in the transferor courts. *See In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 923 F. Supp. 1524, 1527 (S.D. Ala. 1996).[7] Plaintiffs "bear[ ] the initial burden of alleging personal jurisdiction by pleading sufficient material facts to establish the basis for exercise of such jurisdiction." *Mercantile Capital, LP v. Fed. Transtel, Inc.*, 193 F. Supp. 2d 1243, 1247 (N.D. Ala. 2002).

Thus, plaintiffs must establish both (1) a basis for service of process on Capital in the Jurisdictions; and (2) a constitutionally-sufficient relationship between Capital and the Jurisdictions. *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 847 (11th Cir.

---

[7] In analyzing personal jurisdiction, this Court is bound by the relevant federal and state law. In construing state law, it is of course bound by the relevant state court's interpretation of that law. In construing federal law, it is bound by the Eleventh Circuit's interpretation of that law. *See Murphy v. F.D.I.C.*, 208 F.3d 959, 965-66 (11th Cir. 2000) (in non-MDL case, following D.C. Circuit's reasoning in MDL case that "[s]ince federal courts are all interpreting the same federal law, uniformity does not require that transferee courts defer to the law of the transferor circuit.") (citing *In re Korean Air Lines Disaster of September 1, 1983*, 829 F.2d 1171 (D.C. Cir. 1987)).

1988).  Plaintiffs may establish personal jurisdiction by pleading sufficient facts to show that Capital is amenable to suit either under the laws of the Jurisdictions or under a federal statute providing nationwide service of process.  *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 723 (7th Cir. 2013) (citing Fed. R. Civ. P. 4(k)(1)(A) and (1)(C)).  Defendants are entitled to the protections of federal due process under either approach.  *Id.*

Where, as here, a defendant challenges jurisdiction with a supporting declaration, "the burden [ ] shifts back to the plaintiff[s] to produce evidence supporting jurisdiction."  *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).  Although the Court must construe reasonable inferences in favor of plaintiffs when evidence conflicts, it is not obligated to accept plaintiffs' "mere legal conclusions posited as facts" even if plaintiffs submit such statements in a declaration of their own.  *Mewbourne v. Cheytac, USA, LLC*, No. 2:12-CV-0661, 2013 WL 1346569, at *11 (N.D. Ala. Mar. 29, 2013) (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1276-77 (11th Cir. 2009)).

## II.    VENUE

MDL plaintiffs also bear the burden of showing that venue properly lies in the transferor courts as to Capital.  *Pritchett v. Paschall Truck Lines, Inc.*, 714 F. Supp. 2d 1171, 1172 (M.D. Ala. 2010); *In re U.S. Office Prods. Co. Sec. Litig.*, 251 F. Supp. 2d 58, 65 (D.D.C. 2003).  If Capital's declaration controverts the facts alleged in the complaint, plaintiffs must respond with declarations of their own.  *Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1239 (11th Cir. 2012).  Plaintiffs cannot meet their burden with "conclusory or unsupported statements."  *Buckley v. Robertson*, No. 1:96-CV-996-V, 1997 WL 33642373, at *4 (S.D. Ala. Apr. 18, 1997).

## ARGUMENT

I. **THERE IS NO PERSONAL JURISDICTION OVER CAPITAL UNDER SECTION 12 OF THE CLAYTON ACT.**

A. **Plaintiffs Must Meet The Venue Requirement Under Section 12 To Use Its Nationwide Service Clause.**

Plaintiffs cannot rely on Section 12 of the Clayton Act as a basis for personal jurisdiction over Capital in the Jurisdictions if Capital is not amenable to service in the Jurisdictions under Section 12. *See* Mem. Op. at 24-29, June 18, 2014, ECF No. 204 (citing *KM Enters.*, 725 F.3d at 728-30). Where a federal statute like the Clayton Act provides for service of process, courts generally determine whether a defendant can properly be served with process under the statute, and then determine whether "that service comports with the constitutional principles of due process." *Willingway Hosp., Inc. v. Blue Cross & Blue Shield of Ohio*, 870 F. Supp. 1102, 1104 (S.D. Ga. 1994). This Court held that the "integrated" reading of Section 12 is the correct one, and therefore plaintiffs must show that venue in the Jurisdictions is proper under Section 12 if they intend to rely on that provision's nationwide service clause to establish personal jurisdiction.

B. **To Establish Section 12 Venue, Plaintiffs Must Allege Sufficient Facts Showing Transaction Of Substantial Business In The Jurisdictions.**

To establish venue under Section 12, plaintiffs must show, as to each of the Jurisdictions, that Capital either: (1) is an inhabitant of the district; (2) is found in the district; or (3) transacts business in the district. 15 U.S.C. § 22. Plaintiffs do not allege that Capital is an inhabitant of or is found in the Jurisdictions.[8] Instead, plaintiffs allege that this Court has personal jurisdiction

---

[8] In general, corporate defendants are "inhabitants" of the jurisdiction where they are incorporated. *Gen. Elec. Co. v. Bucyrus-Erie Co.*, 550 F. Supp. 1037, 1041 n.5 (S.D.N.Y. 1982). "Being found" is "generally equated with 'doing business' there" but requires a greater degree of business activity than that required for "transacting business." *Id.*

over Capital because it "transact[s] business" in the Jurisdictions.  *See, e.g.,* Compl., Case No.:

2:15-cv-01345-RDP, ¶ 13.  "Transact[ing] business" means "doing business" of a "substantial

character."  *KM Enters.*, 725 F.3d at 731 (quoting *United States v. Scophony Corp. of Am.,* 333

U.S. 795, 807 (1948)).  The touchstone for Section 12 venue is transacting business of a

"substantial character."  *Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.*, 273 U.S. 359,

373 (1927).

      The "substantial character" test is fact-specific.  *See Scophony Corp.*, 333 U.S. at 819

(Frankfurter, J., concurring); *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 429 (2d Cir.

2005) (under Section 12, "the propriety of venue turns on the nature of the corporate defendant's

business"); *Albert Levine Assocs. v. Bertoni & Cotti*, 309 F. Supp. 456, 458 (S.D.N.Y. 1970)

("Each case of this kind is governed by its individual facts . . . .").  "[A] few isolated and

peripheral contacts with the" district do not indicate a substantial transaction of business.  *Gates

v. Wilkinson*, No. 01 Civ. 3145, 2003 WL 21297296, at *1 (S.D.N.Y. June 4, 2003) (quotation

omitted).  Substantiality may be shown by using representatives to solicit business in the district,

*Eastman Kodak*, 273 U.S. at 374, or maintaining offices in the district, *Banana Distribs., Inc. v.

United Fruit Co.*, 269 F.2d 790, 794 & n.8 (2d Cir. 1959).

      Other factors relied on to assess substantiality include "the extent of business solicitation

and advertising within the district, the dollar amount and percentage of sales in the district, and

the continuity and regularity of the defendant's business activities in the district."  *Sanderson v.

Spectrum Labs, Inc.*, 227 F. Supp. 2d 1001, 1007 (N.D. Ind.), *aff'd*, 248 F.3d 1159 (7th Cir.

2000); *see also KM Enters.*, 725 F.3d at 731-32 (finding that limited number of sales, which

constituted a miniscule percentage of defendant's total sales, "provide[d] only the weakest

support for venue"); *Indus. Models, Inc. v. SNF, Inc.*, No. 14 C 8340, 2015 WL 2399089, at *2

(N.D. Ill. May 18, 2015) (finding no venue under Section 12 where less than 1% of defendant's sales occurred in the forum).  Courts consider these factors in the context of the nature of the defendant's business and industry.  *Daniel*, 428 F.3d at 429.

C.      **Plaintiffs Do Not Allege Sufficient Facts Showing That Capital Transacts Substantial Business In The Jurisdictions.**

Plaintiffs' bare allegation that Capital "transacts business" does not meet their burden to "plead sufficient *facts* demonstrating that the defendant transacts business of a substantial nature within the district."  *Sanderson*, 227 F. Supp. 2d at 1007 (emphasis added).  Plaintiffs cannot allege such facts because Capital meets none of the indicia of substantially transacting business in the Jurisdictions.  Capital does not solicit or advertise in the Jurisdictions.  It has no employees who are located there.  It does not have offices or own real property in the Jurisdictions.  It does not offer insurance or other products in the Jurisdictions.  The number of members who happen to reside in the Jurisdictions and Capital's payments for health care services rendered there are insubstantial, and constitute a miniscule percentage of Capital's business.  In the context of the entire health insurance industry, the minuteness of the percentage is even more significant.  *See Austad v. U.S. Steel Corp.*, 141 F. Supp. 437, 441-43 (N.D. Cal. 1956) (comparing insignificant nature of in-district sales with steel industry as a whole).  For these reasons, venue is improper in the Jurisdictions under Section 12, and plaintiffs therefore cannot rely on its nationwide service clause.  Thus, the Clayton Act is not a statutory basis for establishing personal jurisdiction over Capital in the Jurisdictions.

D.      **Jurisdiction Over Capital Pursuant To Section 12 Does Not Comport With Due Process.**

Because Section 12 does not provide a statutory basis for personal jurisdiction, the Court need not reach the question of whether the exercise of jurisdiction over Capital in the

Jurisdictions would satisfy the demands of due process.  In any event, exercising jurisdiction over Capital pursuant to Section 12 would not meet those requirements.

When a federal statute provides the basis for personal jurisdiction, courts apply Fifth Amendment due process analysis to determine whether the assertion of personal jurisdiction comports with "fair play and substantial justice."  *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 945 (11th Cir. 1997).  While this analysis considers a defendant's contacts with the nation as a whole, a defendant's contacts with the plaintiff's chosen forum also must be considered to ensure the defendant is not "unduly burdened by the assertion of jurisdiction in a faraway and inconvenient forum."  *Id.* at 947.  Thus, "fairness" and "reasonableness" must be taken into account in any Fifth Amendment due process analysis.  *Id.* at 945; *see also Fraser v. Smith*, 594 F.3d 842, 849 n.10 (11th Cir. 2010).  To evaluate whether the exercise of jurisdiction is fair and reasonable, "courts should balance the burdens imposed on the individual defendant against the federal interest involved in the litigation."  *BCCI*, 119 F.3d at 946.

### 1.     Litigating In The Jurisdictions Would Impose An Unreasonable Burden On Capital.

Courts rely on the factors used for the Fourteenth Amendment fairness analysis in analyzing inconvenience under the Fifth Amendment.  *Fraser*, 594 F.3d at 849 n.10; *BCCI*, 1119 F.3d at 946.  The factors considered are: "the burden on the defendant," "the interests of the forum State," "the plaintiff's interest in obtaining relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and "the shared interest of the several States in furthering fundamental substantive social policies."  *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987).

Here, the fairness and reasonableness requirements of due process are not met.  Capital does not solicit or conduct business in the Jurisdictions.  Indeed, Capital operates only in a 21-county service area in central Pennsylvania and the Lehigh Valley as described above, which is the crux of providers' claims against it.  Capital therefore would be burdened by having to "mount an effective defense against [] potentially substantial claim[s] in a remote jurisdiction to which [it has] no real ties."  *Butler v. Beer Across Am.*, 83 F. Supp. 2d 1261, 1268 (N.D. Ala. 2000).  The forum states do not have a significant interest in adjudicating a dispute regarding a health insurer that has neither registered with them nor been licensed to operate within their borders and that does not have constitutionally sufficient contacts with them.  And, providers can obtain relief in another forum, because they can bring their claims, as they have done, in federal court in Pennsylvania, the state where Capital operates.  That is consistent with the interests of the interstate judicial system and the states, as the state where Capital operates and is subject to regulatory oversight is the interested state and where the cases against Capital can be disposed of efficiently.

### 2.     Federal Interests Do Not Outweigh This Burden.

Plaintiffs have not shown that there is a federal interest in litigating their antitrust claims in the Jurisdictions that outweighs the burden such litigation would impose on Capital.  *See BCCI*, 119 F.3d at 948.  This analysis involves consideration of the following factors: "the federal policies advanced by the statute, the relationship between nationwide service of process and the advancement of these policies, the connection between the exercise of jurisdiction in the chosen forum and the plaintiff[s'] vindication of [their] federal right, and concerns of judicial efficiency and economy."  *Id.*

Here, the burden on Capital outweighs any purported federal interests for multiple reasons.  First, there is no clear congressional intent for all alleged antitrust co-conspirators to be

11

tried in the same court to justify subjecting Capital to litigation in a distant and inconvenient forum. *See, e.g.*, *Anrig v. Ringsby United*, 603 F.2d 1319, 1322-23 (9th Cir. 1979); *West Virginia v. Morton Int'l, Inc.*, 264 F. Supp. 689, 694-96 (D. Minn. 1967); *Westor Theatres v. Warner Bros. Pictures*, 41 F. Supp. 757, 762 (D.N.J. 1941). Quite the opposite is true. Congress was concerned with the inconvenience imposed on defendants forced to defend cases in far-flung jurisdictions, and for that reason rejected proposals allowing plaintiffs to "force trial in districts far removed from" where a defendant carries on its business. *United States v. Nat'l City Lines*, 334 U.S. 573, 588 (1948) ("In adopting § 12 Congress was not willing to give plaintiffs free rein to haul defendants hither and yon at their caprice."). Absent this congressional intent, plaintiffs cannot show a federal interest or policy to justify forcing Capital to litigate these claims in a district far from its home district.

Second, consistent with the rulings of this Court in its June 18, 2014 Memorandum Opinion, the inclusion of a nationwide service of process provision in Section 12 does not indicate congressional intent to provide nationwide venue or nationwide personal jurisdiction. *See KM Enters.*, 725 F.3d at 730 ("[T]he fact that Congress passed Section 12 with the intent to expand venue in antitrust cases does not indicate that Congress wanted *nationwide* venue."); *Daniel*, 428 F.3d at 425 ("[N]othing in the legislative history suggests that any member intended to extend service of process *beyond* the carefully expanded venue provision.").

Third, plaintiffs can vindicate their federal rights in federal courts with personal jurisdiction over Capital. Fourth, any concerns of judicial efficiency and economy are already being served by the MDL process. Further, requiring actions to be filed in Capital's home jurisdiction promotes judicial economy because collection of any monetary judgment would

have to be pursued there anyway.  *See Willingway*, 870 F. Supp. at 1111.  For all of these

reasons, the burden on Capital outweighs any purported federal interests in this case.

## II.     PLAINTIFFS CANNOT ESTABLISH PERSONAL JURISDICTION UNDER STATE LONG-ARM STATUTES.

### A.     Legal Standard

To exercise personal jurisdiction over Capital in the absence of a federal statute

authorizing service, the Court must find (1) that Capital is amenable to service of summons

under the laws of the Jurisdictions, and (2) that there is a constitutionally sufficient relationship

between Capital and the Jurisdictions.  *Delong Equip. Co.*, 840 F.2d at 847; Fed. R. Civ. P.

4(k)(1)(A).

The long-arm statutes of Arizona, Kansas, Louisiana, Puerto Rico, and Wyoming extend

to the limits of the due process clause of the Fourteenth Amendment to the U.S. Constitution.

*See Atkins v. Calypso Sys. Inc.*, No. CV-14-02706, 2015 WL 1508415, at *3 (D. Ariz. Apr. 1,

2015); Ariz. R. Civ. P. 4.2(a); *Whittaker v. Med. Mut. of Ohio*, 96 F. Supp. 2d 1197, 1199 (D.

Kan. 2000); Kan. Stat. Ann. § 60-308(b)(1)(A), (1)(D); *Choice Healthcare v. Kaiser Found.

Health Plan of Colo.*, 615 F.3d 364, 367 (5th Cir. 2010); La. Rev. Stat. Ann. 13:3201(A)(1);

*Negron-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19, 24 (1st Cir. 2007); P.R. Laws Ann. T.

32 Ap. III, Rule 4.7; *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir.

1996); Wyo. Stat. Ann. § 5-1-107.

Mississippi's long-arm statute, Miss. Code. Ann. § 13-3-57, is not coextensive with

federal due process.  *E.E.O.C. v. Vicksburg Healthcare, LLC*, No. 3:13-cv-895, 2014 WL

4715463, at *2 (S.D. Miss. Sept. 22, 2014).  It does not provide personal jurisdiction over non-

resident defendants in suits filed by non-resident plaintiffs premised on a contract or the

transaction of business.  *Delgado v. Reef Resort Ltd.*, 364 F.3d 642, 644 (5th Cir. 2004);

*Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 418 (5th Cir. 2001). Because none of the named plaintiffs are residents of Mississippi, they cannot establish personal jurisdiction over Capital under the Mississippi long-arm statute as alleged in their complaint.[9] *See* Compl., Case No.: 2:15-cv-01347, ¶ 13.  Although plaintiffs' inability to rely on the Mississippi long-arm statute obviates the need for due process analysis, plaintiffs would not be able to satisfy the constitutional requirements even if they could rely on the long-arm statute, as demonstrated below.

While New York's long-arm statute, N.Y. C.P.L.R. § 302(a)(1), extends to the limits of federal due process, providers may not rely on it unless they plead facts that satisfy its provisions.  Providers claim that jurisdiction exists under Section 302(a)(1) because Capital has allegedly paid New York health care providers for treatment of New York residents and contracted to supply goods or services in New York.  *See* Compl., Case No.: 2:15-cv-01348-RDP, ¶ 13, ECF No. 1.  These conclusory assertions fail to establish jurisdiction under Section 302(a)(1).  To rely on that statute, plaintiffs must show that (1) Capital transacted business within New York or contracted to supply goods or services in New York; and (2) the claim arises from that transaction of business.  *Beacon Enters., Inc. v. Menzies.*, 715 F.2d 757, 765 (2d Cir. 1983).  A claim "arises from" a transaction when there is "some articulable nexus between the business transacted and the cause of action" or "a substantial relationship between the transaction and the claim asserted."  *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (quotations omitted).

---

[9] Even if plaintiffs were able to avail themselves of the Mississippi long-arm statute, Capital does not transact business in Mississippi as demonstrated by its supporting declaration.  And providers plead no *facts* demonstrating that Capital entered into any agreements or otherwise engaged in any allegedly anticompetitive conduct in Mississippi.  *See* Compl., Case No.: 2:15-cv-01347-RDP, ¶ 12, ECF No. 1.

14

Plaintiffs do not allege that Capital contracts with providers in New York.  *See* Compl. ¶¶ 12, 229.  And merely sending payments to New York does not constitute transaction of business under the New York long-arm statute.  *Unlimited Care, Inc. v. Visiting Nurse Ass'n of E. Mass., Inc.*, 42 F. Supp. 2d 327, 331 (S.D.N.Y. 1999).  Thus, providers have not identified any transaction of business or contracts to supply services in New York out of which providers' claims could arise.  Further, the fact that providers would assert their antitrust causes of action regardless of whether a minimal number of Capital's subscribers happen to reside or receive treatment in New York demonstrates that there is no articulable nexus, let alone a "substantial relationship," between the alleged contacts and providers' claims.  *See Beacon Enters.*, 715 F.2d at 765.

In any event, as to each of the Jurisdictions, under the Fourteenth Amendment, this Court may exercise personal jurisdiction only if Capital has minimum contacts with the forum states and the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Courts consider whether the defendant's contacts support either general or specific jurisdiction.  *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).  General jurisdiction requires "continuous and systematic general business contacts" with the forum, such that the defendant is "essentially at home" there.  *Id.* at 2851, 2857.

Specific jurisdiction requires three things:  (1) the defendant purposefully directed its activities at the forum (*i.e.*, purposeful availment); (2) plaintiff's claims arise out of or relate to defendant's contacts with the forum; and (3) the exercise of jurisdiction must comport with fair play and substantial justice (*i.e.*, it must be reasonable).  *Browning Enter., Inc. v. Rex Iron Mach. Prods. Co.*, 504 F. Supp. 2d 1217, 1220-21 (N.D. Ala. 2007).  Capital's contacts with the forum

15

state must be substantial such that it would "reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

Plaintiffs have not alleged facts showing that Capital has "continuous and systematic" contacts with the Jurisdictions to support a finding of general jurisdiction.  Plaintiffs also have not alleged the requisite minimum contacts to support a finding of specific jurisdiction.  Thus, there is no personal jurisdiction over Capital in the Jurisdictions.[10]

### B. Plaintiffs Do Not Establish Minimum Contacts Because They Have Not Demonstrated Purposeful Availment By Capital.

Providers allege that Capital has the requisite minimum contacts with the Jurisdictions because it has members who receive health care services there due to its participation in BlueCard or similar programs or because it intended to pay for services provided to its members in the Jurisdictions.[11]  *See, e.g.,* Compl., Case No.: 2:15-cv-01345-RDP, ¶ 12.  These allegations do not establish that Capital has minimum contacts with the Jurisdictions.

First, the fact that some of Capital's subscribers receive treatment in the Jurisdictions through BlueCard or other programs does not show that Capital has "purposefully availed" itself of the privilege of conducting business in the Jurisdictions.  As the Fifth Circuit has held, non-resident insurers' membership in a national program that facilitates the provision of services to insureds around the country at discounted rates does not constitute purposeful availment.  *See*

---

[10] Because plaintiffs do not allege that general jurisdiction exists over it, Capital addresses only plaintiffs' allegations of its purported minimum contacts.

[11] Providers also allege that subscribers of Blue Plans operating in the Jurisdictions may receive treatment in Capital's service area, *see, e.g.,* Compl., Case No.: 2:15-cv-01345-RDP, ¶ 12, but do not explain how Capital's claims processing activities *outside* of the Jurisdictions for treatment provided to insureds *outside* of the Jurisdictions creates minimum contacts with the Jurisdictions under any theory of jurisdiction.  If a resident of the Jurisdictions happens to seek treatment in Capital's service area, that constitutes unilateral conduct of a third-party that is "not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014).

*Choice Healthcare v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 369-71 (5th Cir. 2010)

(citing *St. Luke's Episcopal Hosp. v. La. Health Serv. & Indem. Co.*, Civ. A. No. H-08-1870,

2009 WL 47125, at *9-10 (S.D. Tex. Jan. 6, 2009)); *see also Resolution Trust Corp. v. First Am.*

*Bank*, 796 F. Supp. 1333, 1337 (C.D. Cal. 1992) (holding that bank's participation in national

electronic fund clearinghouse, which allowed participating members' clients to obtain wire

transfers in foreign states from home banks through member entities, did not establish purposeful

availment).[12]

The Fifth Circuit focused on the fact that there was "no [forum] contract," no "contract

between the parties," and no "substantial connection to [the forum]." *Choice Healthcare*, 615

F.3d at 371 (quotation omitted); *accord Resolution Trust*, 796 F. Supp. at 1337.  The same is true

with BlueCard.  Plaintiffs specifically allege that Capital does not contract with providers in the

Jurisdictions, *e.g.*, Compl., Case No.: 2:15-cv-01345-RDP,  ¶ 229, and there is no substantial

connection to the Jurisdictions.  *See Choice Healthcare*, 615 F.3d at 371-72.[13]  Even if providers

could identify a relevant contract, courts do not find minimum contacts where "the contract was

centered around [defendants'] operations outside" the forum state.  *McFadin*, 587 F.3d at 760

---

[12] *See also Int'l Air Med. Servs. Inc. v. Triple-S Salud Inc.*, No. 15-cv-149, 2015 WL 5158832, at *4 (D. Ariz. Sept. 3, 2015) (finding "that merely contracting with an organization that does business in all fifty states does not thereby subject [a Blue Plan] to the jurisdiction of courts throughout the country"); *Whittaker v. Med. Mut. of Ohio*, 96 F. Supp. 2d 1197, 1201 (D. Kan. 2000) (reliance on Blue Plan in forum state to process claims does not equal purposeful availment of forum state); *Bayada Nurses, Inc. v. Blue Cross Blue Shield of Mich.*, No. 08-cv-1241, 2008 WL 2945388, at *4, *7 (E.D. Pa. July 30, 2008) (holding conclusory allegations of BlueCard membership insufficient to support finding of general jurisdiction and payment through BlueCard insufficient to establish specific jurisdiction).

[13] Providers have not alleged that Capital contracts with any providers in the Jurisdictions.  *See, e.g.,* Compl., Case No.: 2:15-cv-01345-RDP, ¶ 12.  Even if Capital did have contracts with entities in the Jurisdictions, it is well-established that "merely contracting with a resident of the forum state does not establish minimum contacts."  *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009); *accord Walden*, 134 S. Ct. at 1122-23.

(finding no minimum contacts where the "hub of activities" was not in the forum and the connection with the forum was merely "the fortuity of plaintiffs' residence there").

Second, mere payment to providers in the forum is not sufficient to establish personal jurisdiction. *Bayada Nurses*, 2008 WL 2945388, at *7 (collecting cases); *Berg v. Blue Cross & Blue Shield of Utica-Watertown, Inc.*, No. C-93-2752, 1993 WL 467859, at *3-4 (N.D. Cal. Nov. 2, 1993); *see also Int'l Air Med. Servs.*, 2015 WL 5158832, at *4 (holding Arizona provider requesting payment from out-of-state Blue Plan does not create contacts between Blue Plan and Arizona). Even payment to providers in the Jurisdictions using rates established by local Blue Plans does not constitute purposeful availment. *Choice Healthcare*, 615 F.3d at 371-72 (rejecting argument that participation in program allowing defendant to pay discounted rates to plaintiff constituted purposeful availment of forum).

Third, Capital's declaration demonstrates that it does not operate or solicit business in the Jurisdictions, and the small number of members residing or receiving treatment there does not support a finding of "purposeful availment." A defendant who does not operate or solicit business in the forum state does not purposefully direct its activities there by incidentally providing services to customers based in the forum state and collecting payments from them. *See Hi-Tex, Inc. v. TSG, Inc.*, 87 F. Supp. 2d 738, 744 (E.D. Mich. 2000); *Intrust Fin. Corp. v. Entrust Fin. Credit Union*, No. 11-1312-SAC, 2012 WL 2993893, at *4-6 (D. Kan. July 20, 2012) (regional company that knowingly accepted and provided services to limited number of customers in Kansas, outside of its primary state of operation, did not purposefully avail itself of the privilege of conducting business in Kansas even though it contracted with entities outside of its primary state of operation to enable customers to receive services in other states).

18

Capital's principal business activity is solicitation of business in its home area.  *See supra*, 3; *see also, e.g.,* Compl., Case No.: 2:15-cv-01345-RDP, ¶¶ 1, 6.  Capital does not solicit members or issue insurance contracts or policies in the Jurisdictions.  Thus, the "hub" of Capital's business activities is in its home area.  *See McFadin*, 587 F.3d at 761.  Any services that Capital provides to residents of or visitors to the Jurisdictions are incidental to the business that Capital solicits and transacts in its home state.  Capital has not purposefully availed itself of the privilege of conducting business in the Jurisdictions just because some of its members happen to receive treatment or reside outside of its home area.

### C.     Plaintiffs' Antitrust Causes Of Action Do Not Arise Out Of Or Relate To Capital's Contacts With The Jurisdictions.

Even if plaintiffs could show that Capital purposefully availed itself of the privilege of conducting activities in the Jurisdictions, they could not show that the alleged contacts arise out of or are sufficiently related to their causes of action.  Under Eleventh Circuit law, "the contact must be a 'but-for' cause."  *Fraser*, 594 F.3d at 850 (quotation omitted).  Because a pure "but-for" test would be "over-inclusive," however, courts must look for "a closer and more substantial causal relationship between the relevant contacts and the alleged [antitrust violation]."  *Id.* at 851.

Plaintiffs cannot establish the required nexus because their alleged injuries would have occurred regardless of whether Capital had contacts with the Jurisdictions or not.  *See Kuenzle*, 102 F.3d at 456-57.  As a matter of pure logic, the minimal number of Capital's members receiving treatment in the Jurisdictions and the incidental payments to providers there are not causally connected to plaintiffs' antitrust claims grounded in allegations that the Blue Plans operate in exclusive territories in their home states.  *See, e.g.,* Compl., Case No.: 2:15-cv-01345-RDP,  ¶¶ 1, 4, 6, 195.  Providers' allegations that Capital engaged in a price fixing and boycott

conspiracy by refusing to contract with providers outside of its service area, *id.* ¶ 229, actually demonstrates a lack of contacts in the Jurisdictions – the very opposite of a causal connection between plaintiffs' antitrust claims and Capital's contacts with the Jurisdictions.

      **D.**    **Based On Its Limited Contacts With The Jurisdictions, Capital Would Not Reasonably Anticipate Being Haled Into Court There.**

Plaintiffs cannot establish specific personal jurisdiction by arguing that Capital knew or expected that its members would seek treatment in the Jurisdictions or that its business activities would affect residents of the Jurisdictions.  While foreseeability is a consideration, it "has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause" on its own. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295 (1980).  The key is a defendant's conduct and connection with the forum state.  *Id.*

Capital's awareness that a small number of its members may seek treatment in the Jurisdictions is insufficient to establish personal jurisdiction.  *See Choice Healthcare*, 615 F.3d at 370-71; *Perez v. Pan Am. Life Ins. Co.*, No. 96-20241, 1996 WL 511748, at *1-2 (5th Cir. 1996). None of the contacts that plaintiffs allege demonstrates that Capital should reasonably anticipate being haled into court in the Jurisdictions, particularly in the absence of any evidence of purposeful availment.

      **E.**    **Plaintiffs' Vague Conspiracy Allegations Do Not Establish Personal Jurisdiction In The Jurisdictions.**

Plaintiffs have not specifically alleged that they seek to establish personal jurisdiction over Capital under a conspiracy theory of personal jurisdiction.  *See, e.g.,* Compl., Case No.: 2:15-cv-01345-RDP, ¶ 13.  Regardless, jurisdiction under such a theory is either unavailable as a matter of the laws of the Jurisdictions or exercising it in these cases would not comport with due process.

The conspiracy theory of personal jurisdiction is an avenue to establish jurisdiction over a defendant under state long-arm statutes, and is thus a matter of state law. *See Mazer*, 556 F.3d at 1281-82. Arizona, Louisiana, Mississippi, Puerto Rico, and Wyoming have not recognized such a theory. *See Walker v. Madorsky*, No. 1 CA-CV 12-0395, 2013 WL 950622, at *5 (Ariz. Ct. App. Mar. 12, 2013) (rejecting plaintiff's argument based on a conspiracy theory of personal jurisdiction); *Smith Stag, L.L.C. v. Wilson & Meyer Custom Theater Interiors, L.L.C.*, 6 So. 3d 921, 924 (La. Ct. App. 2009) (declining to exercise personal jurisdiction over Texas resident even though her alleged co-conspirators acted within the state of Louisiana); *Indus. Siderurgica, Inc. v. Thyssen Steel Caribbean, Inc.*, 14 P.R. Offic. Trans. 708, 720-21 (P.R. 1983) (rejecting conspiracy theory of personal jurisdiction to satisfy the "transacted business" prong of Puerto Rico long-arm statute); *Goya Foods Inc. v. Oy*, 959 F. Supp. 2d 206, 211 (D.P.R. 2013) (declining to apply conspiracy theory of personal jurisdiction).[14]   Even if they had, the plaintiffs would not be able to establish jurisdiction over Capital under the theory, as demonstrated below.

Kansas and New York recognize the conspiracy theory of personal jurisdiction for the purpose of satisfying their state long-arm statutes. *See Merriman v. Crompton Corp.*, 146 P.3d 162, 181 (Kan. 2006); *Lawati v. Montague Morgan Slade Ltd.*, 102 A.D.3d 427, 428 (N.Y. App. Div. 2013). However, both Kansas and New York recognize that the exercise of jurisdiction must still comport with federal due process. *Merriman*, 146 P.2d at 183; *Small v. Lorillard Tobacco Co.*, 672 N.Y.S.2d 601, 608 (Sup. Ct. N.Y. Cnty. 1997), *rev'd on other grounds*, 679 N.Y.S. 2d 593 (N.Y. App. Div. 1998). New York federal courts have refused to entertain the

---

[14] Capital was unable to locate a Mississippi or Wyoming state case addressing the conspiracy theory of personal jurisdiction. For the record, the Tenth Circuit (whose territory includes Wyoming) has recognized such a theory, but that finding has no bearing on whether plaintiffs may rely on it as a matter of Wyoming law. In any event, the Tenth Circuit recognizes that "in addition to pleading a prima facie conspiracy, due process requires that a defendant also have minimum contacts with the forum." *Hart v. Salois*, 605 F. App'x 694, 699 (10th Cir. 2015), *appeal docketed*, No. 15-6196 (U.S. Sept. 22, 2015).

conspiracy theory of personal jurisdiction because of concerns that such a theory does not comport with the minimum contacts requirement of federal due process. *See, e.g.*, *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015); *Tymoshenko v. Firtash*, No. 11-CV-2794, 2013 WL 1234943, at *4-5 (S.D.N.Y. Mar. 27, 2013).

Subjecting Capital to personal jurisdiction under a conspiracy theory would not comport with federal due process. Even in the minority of states that do recognize the theory, the exercise of jurisdiction under it must still comport with the requirements of due process. Plaintiffs must show that Capital "purposefully avail[ed]" itself of the privilege of conducting activities within the forum state through "activity deliberately directed toward the forum state." *Merriman*, 146 P.3d at 184 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)). Additionally, Capital's "suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014); *see also Giraldo v. Drummond Co.*, No. 2:09-CV-1041, 2012 WL 2358306, at *6-7 (N.D. Ala. June 20, 2012). Plaintiffs' generalized conspiracy allegations do not support the exercise of personal jurisdiction over Capital. Plaintiffs do not allege that Capital deliberately directed any suit-related conduct toward the Jurisdictions.

> **F.   Exercising Personal Jurisdiction Over Capital Would Not Comport With "Fair Play And Substantial Justice."**

Because Capital does not have sufficient contacts with the Jurisdictions, the Court need not inquire into other factors to decide whether exercising personal jurisdiction would comport with "fair play and substantial justice." *BCCI*, 119 F.3d at 945. But if the Court were to undertake this inquiry, the exercise of personal jurisdiction in this case would not comport with "fair play and substantial justice" for the reasons discussed in Section I.D above.

**III.     VENUE IS IMPROPER UNDER SECTIONS 4 AND 16 AND 28 U.S.C. § 1391.**

Because the Jurisdictions lack personal jurisdiction over Capital, the question of venue
there is moot.  *See Browning Enter.*, 504 F. Supp. 2d at 1220.  Venue is not proper in the
Jurisdictions for the additional reason that neither Sections 4 nor 16 of the Clayton Act, nor the
general federal venue statute, allows for venue over Capital in the Jurisdictions.

**A.     There Is No Venue Under Sections 4 And 16 Of The Clayton Act.**

Section 4 of the Clayton Act provides that venue is proper in the district in which the
defendant "resides or is found or has an agent."  15 U.S.C. § 15(a).  A corporation "resides" in a
district if it is incorporated or registered to do business in the state, and is found "in any district
where it 'is continuously doing business or carrying on any substantial part of its activities.'"
*Pocahontas Supreme Coal Co., Inc. v. Nat'l Mines Corp.*, 90 F.R.D. 67, 69 (S.D.N.Y. 1981)
(citation omitted).  Capital is not incorporated or registered to do business in the Jurisdictions,
and does not do business there.  Further, Capital does not have an agent there.

Section 16 of the Clayton Act is similarly unavailing because "it does not confer
venue . . . , but rather, provides that a 'person . . . shall be entitled to sue for and have injunctive
relief, *in any court of the United States having jurisdiction over the parties*.'"  *Black v. JP
Morgan Chase & Co.*, No. 2:10-CV-848, 2011 WL 4102802, at *2 n.4 (W.D. Pa. Aug. 10, 2011)
(emphasis in original) (citing 15 U.S.C. § 26), *report and recommendation adopted*, No. 2:10-
CV-848, 2011 WL 4089379 (W.D. Pa. Sept. 14, 2011).  With no personal jurisdiction over
Capital as set forth above, plaintiffs cannot rely on Section 16 to establish venue.

**B.     There Is No Venue Under 28 U.S.C. § 1391.**

No provision of the general federal venue statute, 28 U.S.C. § 1391(b), provides a basis
for venue.  For venue under § 1391(b)(1), one of the defendants must reside in the district and all
of the defendants must reside in the state in which the district is located.  Corporate defendants

are "deemed to reside" in any judicial district in which they are subject to personal jurisdiction. 28 U.S.C. § 1391(c)(2).  Because Capital is not subject to personal jurisdiction in the Jurisdictions, venue is not proper under § 1391(b)(1).

For venue under § 1391(b)(2), courts conduct a two-part inquiry: (1) identify what acts or omission "gave rise" to plaintiffs' claims; and (2) determine whether a "substantial part" of the acts or omissions took place in the district.  *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003).[15]  Plaintiffs do not allege facts showing that any relevant acts, let alone "substantial" acts, gave rise to their antitrust claims or took place in the Jurisdictions.[16]

Finally, § 1391(b)(3) provides that venue is proper in any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to the action, *if* there is no district in which an action may otherwise be brought under § 1391(b).  Because plaintiffs have not shown that there is no other district in which venue is proper, § 1391(b)(3) does not apply. *Murdoch v. Rosenberg & Assocs., LLC*, 875 F. Supp. 2d 6, 10 (D.D.C. 2012).

## <u>CONCLUSION</u>

Capital respectfully requests that the Court dismiss the claims brought against it in this case for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and for improper venue under Fed. R. Civ. P. 12(b)(3).

---

[15] The federal venue statute protects defendants and "Congress therefore meant to require courts to focus on relevant activities of the defendant, not of the plaintiff."  *Id.* at 1371-72 (internal quotation omitted).

[16] The Court should disregard providers' conclusory statement that "a significant part of the events, acts and omissions giving rise to this action occurred in [this] District" because they provide no facts of any events, acts or omissions that supposedly occurred in the Jurisdictions.  *See, e.g.,* Compl., Case No.: 2:15-cv-01345-RDP, ¶ 14.

DATED: October 19, 2015                Respectfully submitted,

                                       s/ Robert K. Spotswood
                                       Robert K. Spotswood (SPO 001)
                                       Michael T. Sansbury (SAN 054)
                                       Joshua K. Payne (PAY 024)
                                       Mary G. Menge (MEN 014)
                                       SPOTSWOOD SANSOM & SANSBURY LLC
                                       One Federal Place
                                       1819 Fifth Avenue North, Suite 1050
                                       Birmingham, Alabama 35203
                                       TEL:   (205) 986-3620
                                       FAX:   (205) 986-3639
                                       E-mail:        rks@spotswoodllc.com
                                                      msansbury@spotswoodllc.com
                                                      jpayne@spotswoodllc.com
                                                      mmenge@spotswoodllc.com

                                       *Attorneys for Defendant Capital BlueCross*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 19, 2015, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic notice to counsel of record.

s/ Joshua K. Payne
OF COUNSEL